**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE PROTECT DEMOCRACY PROJECT, INC., <br> 2020 Pennsylvania Avenue, NW, #163, <br> Washington, DC 20006 <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND <br> HUMAN SERVICES, CENTERS FOR <br> MEDICARE & MEDICAID SERVICES, <br> 7500 Security Boulevard, Baltimore, MD 21244, <br><br> Defendant. | Civil Action No. 18-1975 |

**COMPLAINT**

1.  Plaintiff, The Protect Democracy Project, Inc. ("Protect Democracy"), brings this action against Defendant, the U.S. Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS"), to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and for related declaratory and injunctive relief. Plaintiff's underlying FOIA request seeks information concerning the extent of any White House intervention with CMS's consideration of matters involving Novartis, a Swiss pharmaceutical company that paid President Trump's personal attorney, Michael Cohen, $1.2 million for access to key Trump administration officials. Plaintiff alleges as follows:

**PARTIES**

2.  Plaintiff Protect Democracy is an organization with 501(c)(3) tax-exempt status, incorporated under the laws of the District of Columbia, and headquartered at 2020 Pennsylvania Avenue, NW, #163, Washington, DC 20006.

1

3. Plaintiff's mission is to prevent our democracy from declining into a more authoritarian form of government. As part of this mission, Plaintiff seeks to inform public understanding of government operations and activities by gathering and disseminating information that is likely to contribute significantly to the public understanding of executive branch operations and activities. Plaintiff regularly requests such information pursuant to FOIA. Plaintiff intends to give the public access to documents obtained via FOIA by publishing them on its website, www.protectdemocracy.org, and to provide information about and analysis of those documents as appropriate.

4. Defendant CMS is an agency of the federal government of the United States with its headquarters at 7500 Security Boulevard, Baltimore, MD 21244.

5. Defendant has possession, custody, and control of the records that Plaintiff seeks in response to its FOIA request.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## STATEMENT OF FACTS

8. In May 2018, press reports revealed that, following the 2016 presidential election, President Trump's personal attorney, Michael Cohen, sold White House access to various companies with business pending before the new Trump administration.[1]

9. Among those companies was Novartis, which paid Mr. Cohen, through his shell company Essential Consultants LLC, $1.2 million over a twelve-month period ending in

---

[1] Mike McIntire et al., *Firm Tied to Russian Oligarch Made Payments to Michael Cohen*, N.Y. Times (May 8, 2018), https://www.nytimes.com/2018/05/08/us/politics/michael-cohen-shell-company-payments.html.

February 2018.[2] During the initial contract negotiation in January and February 2017, Mr. Cohen represented himself to Novartis as counsel to President Trump and the Trump Organization.[3] The initial draft contract proposal that Novartis sent Mr. Cohen, who later modified it, called explicitly for Mr. Cohen to provide "access to key policymakers" in the Trump administration.[4]

10.     In June 2017, Novartis sent drug pricing recommendations to Mr. Cohen for "discussion with . . . Trump administration" officials.[5] Novartis provided Mr. Cohen with six recommended drug pricing initiatives that echoed the platform Novartis had pressed in industry meetings with President Trump and administration officials earlier that year.[6] A top priority for Novartis was promoting outcomes-based pricing for drug reimbursement.[7] This policy and others resembling Novartis's recommendations were featured in President Trump's May 2018 "Blueprint to Lower Drug Prices and Reduce Out-of-Pocket Costs."[8]

11.     According to press reports, in around August 2017, Novartis secured a payment deal with CMS for its new drug Kymriah, an expensive cancer treatment, under the outcomes-based pricing model that Novartis had proposed to Mr. Cohen for discussion with Trump administration officials.[9]

12.     In May 2018, members of Congress began investigating the payments by Novartis

---

[2] Staff of S. Comm. on Finance et al., *White House Access for Sale: Michael Cohen, Novartis and the Bid to Sell Access to the Trump Administration* (July 12, 2018), https://www finance.senate.gov/imo/media/doc/REPORT%20White%20House%20Access%20for%20Sale%20Michael%20Cohen%20and%20Novartis.pdf.
[3] *White House Access for Sale*, *supra*, note 2, at 4, 17-18.
[4] *Id.* at 3, 19-20.
[5] *Id.* at 3, 10-11.
[6] *Id.* at 10-11, 13-14.
[7] *Id* at 10, 13.
[8] *Id.* at 14.
[9] *See* Sarah Karlan-Smith and David Pittman, *CMS Quit Test of Pricey Cancer Treatment Amid Concerns Over Industry Role*, Politico (July 9, 2018), https://www.politico.com/story/2018/07/09/cms-quit-test-of-pricey-cancer-treatment-amid-concerns-over-industry-role-674086.

and other companies to Mr. Cohen, and whether such payments resulted in preferential treatment from Trump administration officials. Amid the congressional scrutiny, CMS reportedly pulled out of the Kymriah deal.[10] Though CMS has not explained why, the press reportedly obtained emails showing that agency lawyers were uncomfortable with Novartis's influence over the arrangement.[11]

13. A published report of the congressional investigation leaves key questions unanswered, most importantly whether and to what extent President Trump or White House staff intervened in federal agency decisions regarding the business matters of companies that paid Mr. Cohen.

14. The American public has the right to know whether the White House has secretly sought to influence the decision making of federal agencies to benefit those President Trump favors or to punish those he opposes. A president's personal interference with decisions entrusted to federal agencies threatens a bedrock principle of our democracy that every American will be treated equally under the law and that none is above the law. That principle depends on an agency's impartiality—both real and perceived—and the freedom of agency officials to use their relevant expertise, fair procedures, and merit-based processes in determining the appropriate outcome.

15. The American Constitution grounds this principle in several places. It requires the President to "take care that the Laws be faithfully executed." The Fifth Amendment's Due Process Clause requires the government to follow fair and neutral procedures before denying people important interests, thus limiting political influence over objective agency processes.

---

[10] *Id.*
[11] *Id.*

And the Equal Protection Clause, which precludes the federal government from denying to any person equal treatment under the laws, prohibits the White House from using its influence to cause favoritism for friends, or disadvantage for enemies, under the law.

16. Moreover, federal laws require, in nearly all cases, open and competitive bidding or merit-based processes to govern the awarding of contracts and grants.

17. For these reasons, White Houses of both parties have traditionally prohibited White House staff from engaging in contacts with agency officials in ways that either interfere with the impartial application of agency actions involving specific parties or create the appearance of improper interference.[12] Such policies encourage the proper coordination between the White House and agencies on policy, personnel, communications and other matters of general applicability, but prevent improper interference in matters involving specific parties by restricting contacts regarding individual enforcement, investigatory, adjudicatory, grant-making or contracting decisions.

18. Breaking with tradition, however, President Trump's White House has issued a policy that covers only certain communications between the White House and the Department of Justice ("DOJ").[13] Prior policies have covered the full range of law enforcement and other specific party matters that are routinely handled by many federal agencies, including the Department of Health and Human Services, of which CMS is a part.

19. In April 2017, Plaintiff wrote a letter to White House Counsel Donald McGahn II, encouraging him to go beyond the limited DOJ contacts policy and issue a robust policy imposing similar restrictions on White House staff contacts with other agencies regarding

---

[12] *See generally* Protect Democracy, *White House Communications with the DOJ and FBI* (Mar. 8, 2017), https://protectdemocracy.org/agencycontacts/.

[13] Memorandum from Donald McGahn II to All White House Staff, Communications Restrictions with Personnel at the Department of Justice (Jan. 27, 2017), https://www.politico.com/f/?id=0000015a-dde8-d23c-a7ff-dfef4d530000.

matters involving specific parties in line with longstanding precedents from both Democratic and Republican administrations.[14] Plaintiff further emphasized the need to vigorously enforce the existing policy in light of several troubling news reports that appeared to have resulted from inappropriate White House contacts with DOJ.

20. Reports of Mr. Cohen's sale of White House access to companies seeking favorable treatment from federal agencies only reinforce the need for a broad and well-enforced agency contact policy. So too do continued reports of President Trump's personal interference with agency decision making, including the recent report of his intervention in the General Services Administration's plan for a new Federal Bureau of Investigations headquarters.[15] Those reported agency contacts are now the subject of congressional inquiry.[16]

21. White House interventions in specific federal agency determinations raise substantial constitutional issues and threaten the impartial rule of law on which our democracy depends. That is all the more so when they are done in secret. The citizens of our democracy deserve to learn the extent to which the White House is communicating with federal agencies about specific matters, and whether those communications are targeted at specific transactions that may have personal or political interest to those in power.

---

[14] Letter from Allison Murphy, Protect Democracy, to Donald McGahn II, White House Counsel (April 18, 2017), https://protectdemocracy.org/resource-library/document/letter-white-house-counsel-agency-contacts-policy/.

[15] Jonathan O'Connell, *Trump Intervenes in FBI Headquarters Project*, Wash. Post (July 30, 2018) https://www.washingtonpost.com/business/2018/07/30/trump-intervenes-fbi-headquarters-project/?utm_term=.e0c4de69d628.

[16] Jonathan O'Connell, *GSA Chief May Have Misled Congress about White House Involvement in FBI Headquarters, According to Draft of Inspector General Report*, Wash. Post (Aug. 7, 2018), https://www.washingtonpost.com/business/2018/08/07/gsa-chief-may-have-misled-congress-about-white-house-involvement-fbi-headquarters-inspector-general-finds/?utm_term=.98a85ddfbb5b.

*FOIA Request to CMS*

22. On June 26, 2018, Plaintiff sent a FOIA request to Defendant CMS. *See* Exhibit A.

23. The request sought (1) any and all records reflecting communications between any staff in the Executive Office of the President, including but not limited to those with email addresses ending in "eop.gov," and any CMS employees or appointees mentioning Michael Cohen, Essential Consultants, Novartis, Novartis's former CEO Joseph Jimenez, or Novartis's General Counsel Felix Ehrat; and (2) any and all records created or transmitted by CMS employees or appointees mentioning Michael Cohen, Essential Consultants, Felix Ehrat, or Joseph Jimenez. *Id.*

24. Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II). *Id.*

*Agency Response*

25. Plaintiff received a letter from Defendant CMS dated June 27, 2018. *See* Exhibit B.

26. The letter acknowledged receipt of Plaintiff's FOIA request. It further stated that "a search has been initiated for records falling within the scope of your request" and that if any such documents were located, the agency would review them and notify Plaintiff of its decision regarding the documents' release. *Id.*

27. The CMS letter granted Plaintiff's fee waiver request. *Id.*

28. Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request, Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiff of "such determination and the reasons therefor," and, in the case

7

of an adverse determination, notify the Plaintiff of his appeal rights. 5 U.S.C. § 552(a)(6)(A)(i).

29. To date, Defendant has failed to make the required determination and notifications regarding the material in its possession.

## COUNT I

### (Violation of FOIA, 5 U.S.C. § 552)

30. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

31. Defendant is in violation of FOIA by failing to respond to Plaintiff's request within the statutorily prescribed time limit and by unlawfully withholding records responsive to Plaintiff's request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1) Order Defendant, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's request;

(2) Order Defendant, by a date certain, to demonstrate that it has conducted an adequate search;

(3) Order Defendant, by a date certain, to produce to Plaintiff any and all non-exempt records, or portions of records, responsive to Plaintiff's request, as well as a *Vaughn* index of any records, or portions of records, withheld due to a claim of exemption;

(4) Enjoin Defendant from improperly withholding records responsive to Plaintiff's request;

(5) Grant Plaintiff an award of attorney fees and other reasonable litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) Grant Plaintiff such other relief as the Court deems appropriate.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date:  August 23, 2018 | */s/ Benjamin Berwick*  <br>Benjamin Berwick (MA0004)  <br>benjamin.berwick@protectdemocracy.org  <br>Deana El-Mallawany  <br>(*pro hac vice* admission forthcoming)  <br>deana.elmallawany@protectdemocracy.org  <br>The Protect Democracy Project, Inc.  <br>10 Ware Street  <br>Cambridge, MA 02138  <br>Phone: 202-599-0466  <br>Fax: 929-777-8428  <br>  <br>*Counsel for Plaintiff* |